Filed 4/15/25  P. v. Calvary Chapel San Jose CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CALVARY CHAPEL SAN JOSE et al.,<br><br>Defendants and Appellants. | H051860<br>(Santa Clara County<br>Super. Ct. No. 20CV372285) |

## I.  INTRODUCTION

Appellant Calvary Chapel San Jose is a domestic, nonprofit corporation that operates a church located in San Jose.  Appellant Mike McClure is Calvary Chapel's senior pastor (collectively, Calvary Chapel).  Respondents the State of California, the County of Santa Clara (County), and Sara H. Cody, M.D. (collectively, the People) brought an action against Calvary Chapel to collect administrative fines of over $2 million that the County had imposed on Calvary Chapel for violating certain public health orders requiring face coverings and submission of a social distancing protocol, which the County had issued to slow the spread of the COVID-19 virus.

The trial court granted the People's motion for summary adjudication of the collection action, ruling that the appropriate amount of administrative fines that Calvary Chapel owed for its undisputed refusal to comply with the public health orders' face

covering requirements from November 9, 2020, through June 21, 2021, was $1,228,700, and entered judgment in the People's favor.

On appeal, Calvary Chapel contends that the trial court erred in granting the People's motion for summary adjudication and the judgment must be reversed because (1) the public health orders at issue violate the free exercise clause of the First Amendment (U.S. Const., 1st Amend.); (2) the County violated due process in imposing the administrative fines; and (3) the fines violate the excessive fines clause of the Eighth Amendment (U.S. Const., 8th Amend.)  For the reasons stated below, we find no merit in Calvary Chapel's contentions and affirm the judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Since the issues on appeal arise solely from Calvary Chapel's violation of certain public health orders requiring face coverings, our summary of the factual and procedural background will focus on those orders.

### A. *Public Health Orders and Urgency Ordinance*

On February 3, 2020, the County declared that COVID-19, a highly contagious viral disease, was a local health emergency.  The County issued the shelter in place orders of Sarah Cody, M.D. (Dr. Cody), the County's Public Health Officer, from March 2020 through June 2020 for the purpose of slowing the spread of the COVID-19 virus in the community.  These public health orders were revised over time to allow limited resumption of business and outdoor activities as the spread of COVID-19 slowed.

By July 2020, the County determined that the public health orders relating to COVID-19 would transition from a shelter in place model to a harm reduction model.  On July 2, 2020, the County issued Dr. Cody's risk reduction order that superseded the previous shelter in place orders.  Effective July 13, 2020, the July 2, 2020 risk reduction order applied to all individuals, businesses, and entities in the county and required face coverings to be used inside any business facility or while using public transportation.  Businesses were also required to submit an online social distancing protocol to the

2

County that stated their compliance with the safety measures required by the July 2, 2020 order. The County included churches in the definition of "business" in the July 2, 2020 risk reduction order, which states: "For purposes of this [o]rder, a 'business' includes any for-profit, non-profit, or educational entity, whether a corporate entity, organization, partnership, or sole proprietorship, and regardless of the nature of the service, the function it performs, or its corporate or entity structure. For clarity, 'business' also includes a for-profit, non-profit, or educational entity performing services or functions under contract with a governmental agency."

To authorize enforcement of these and other COVID-19 public health orders, on August 11, 2020, the County's board of supervisors adopted Urgency Ordinance No. NS-9.921 (Urgency Ordinance). The Urgency Ordinance stated that "[f]ailure to comply with any of the of the public health orders, . . . constitutes an imminent threat and menace to public health and is a public nuisance. The purpose of this ordinance is to facilitate efficient and widespread enforcement of the public health orders to control the spread of COVID-19 and mitigate its impacts." (Some capitalization omitted.)

The Urgency Ordinance also provided that County enforcement officers were authorized to determine whether the public health orders had been violated and to issue notices of violation. The Urgency Ordinance included a schedule of administrative fines for violations of the public health orders and set forth the procedure for appeal of the administrative fines to a hearing officer.[1]

---

[1] Government Code section 53069.4, subdivision (a)(1) provides: "The legislative body of a local agency, . . . may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty. The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties. Where the violation would otherwise be an infraction, the administrative fine or penalty shall not exceed the maximum fine or penalty amounts for infractions set forth in [s]ection 25132 and subdivision (b) of [s]ection 36900."

On October 5, 2020 the County issued Dr. Cody's revised risk reduction order, which superseded the previous risk reduction order. Regarding face coverings, the revised risk reduction order provided in part that "[f]ace coverings must be worn at all times and by all individuals as specified in the California Department of Public Health's mandatory guidance for the use of face coverings . . . and in accordance with any specific directives issued by the county health officer." (Some capitalization omitted.) The June 18, 2020 guidance for the use of face coverings stated that persons were required to wear face coverings in specified high risk situations, including "[i]nside of, or in line to enter, any indoor public space." The revised risk reduction order also required all businesses to submit an online social distancing protocol, in which the business stated their compliance with the public safety measures, including the face covering requirements.

The revised risk reduction order was later superseded when the County issued Dr. Cody's May 18, 2021 safety measures order. Regarding face coverings, the safety measures order stated: "All persons must follow the health officer's mandatory directive on use of face coverings." (Capitalization omitted.) The mandatory directive on use of face coverings, effective May 19, 2021, stated that "[a]ll residents, businesses, and governmental entities must follow the California Department of Public Health's guidance for use of face coverings . . . issued on May 3, 2021." (Underscoring & some capitalization omitted.) The California Department of Public Health's May 3, 2021 guidance for the use of face coverings required, among other things, that face coverings be worn inside, except in one's home. (Some capitalization omitted.) The guidance for the use of face coverings also included exceptions for specified individuals, such as persons alone in a car or for whom wearing a face covering would create a work-related risk.

Thereafter, on June 21, 2021, the County issued Dr. Cody's phase out order, which rescinded the previous safety measures order with certain exceptions due to the decline in COVID-19 cases and widespread community vaccination. The phase out order clarified

4

that all individuals and entities were still required to comply with state orders and mandatory guidance by the State Department of Public Health, and specifically required businesses to require all personnel who were not fully vaccinated to comply with the mandatory directive on face coverings.

**B.** *Administrative Proceedings*

### 1. August 23, 2020 Notice of Violation

The County issued a notice of violation dated August 23, 2020, to Calvary Chapel for, among other things, failure to submit a social distancing protocol as required by the public health orders. The fines imposed in the notice of violation included a fine of $250 per day for failure to submit and implement a social distancing protocol, failure to post a social distancing protocol, and failure to train staff on implementing a social distancing protocol. The notice of violation also stated that the fines would begin accruing after a 48-hour grace period and would double each day until corrected, to a maximum fine of $5,000 per day.

The fines imposed on Calvary Chapel for failure to submit a social distancing protocol accrued from the August 23, 2020 notice of violation to May 18, 2021, when the requirement of a social distancing protocol was rescinded by the County.

### 2. Administrative Hearing and Order

Calvary Chapel appealed the notices of violation of public health orders that the County had issued from August 23, 2020, through October 18, 2020, and also appealed the fines in the amount of $327,750 that the County had imposed for those violations, to the County hearing officer pursuant to the appeal procedure provided by Urgency Ordinance.

The notices of violation at issue included a September 2, 2020 notice of continuing violation and imposition of fines. The identified violations included Calvary Chapel's failure to require everyone attending, performing, or speaking at Calvary Chapel's services to wear face coverings and failure to submit a social distancing protocol.

5

On October 21, 2020, the County hearing officer held a hearing at which the County presented witness testimony, documentary evidence, and video evidence. Calvary Chapel did not present any evidence. The hearing officer stated that Calvary Chapel's constitutional challenges to the public health orders were barred from consideration at the hearing by the provisions of the Urgency Ordinance, and therefore the public health orders and Urgency Ordinance would be presumed to be constitutional.

In his written administrative decision, dated November 2, 2020, the County hearing officer found that Calvary Chapel did not dispute that it had violated all 10 public health orders as alleged by the County; that Calvary Chapel had failed to require everyone attending, performing, or speaking at Calvary Chapel's services to wear face coverings; and that Calvary Chapel had failed to submit a social distancing protocol. The County hearing officer also found that Calvary Chapel had intentionally failed to comply with the public health orders.

The County hearing officer therefore denied Calvary Chapel's appeal and upheld the fines imposed in the amount of $327,750. The administrative decision also advised Calvary Chapel of its right to seek review by the superior court.

### 3. November 9, 2020 Notice of Violation

After the administrative hearing was held in October 2020 the County issued a notice of violation dated November 9, 2020, to Calvary Chapel that stated, among other things, that Calvary Chapel had violated the County's October 5, 2020 revised risk reduction order by (1) failing to require the use of face coverings by clients, customers, and visitors when they were in an indoor space open to the public; and (2) failing to require the use of face coverings by all personnel, including employees, owners, contractors, and volunteers at the facility.

The November 9, 2020 notice of violation also stated the fines that were imposed on Calvary Chapel for violating the revised risk reduction order's face covering requirements. Due to Calvary Chapel's repeated violations and refusals to comply with

6

the public health orders after receiving a cease and desist letter and 12 previous notices of violation, the County imposed fines of (1) $1,000 per day for failing to require the use of face coverings by clients, customers, and visitors when in an indoor space open to the public; and (2) $1,000 per day for failing to require the use of face coverings by all personnel, including employees, owners, contractors, and volunteers at the facility.

Further, the November 9, 2020 notice of violation stated that the fines would begin accruing immediately and double each day until the face covering violations were corrected, up to a maximum of $5,000 per day. To correct the violations, Calvary Chapel was ordered to immediately comply with the public health orders and (1) "Require all attendees and congregants to wear face coverings while attending gatherings or while indoors in a space open to the public;" and (2) "Require all personnel to wear face coverings while attending gatherings or while indoors in a space open to the public." (Boldface omitted.) Correction also required Calvary Chapel to submit a sworn statement attesting to compliance, which Calvary Chapel did not do.

The November 9, 2020 notice of violation also informed Calvary Chapel of the procedure to appeal the violations identified in the notice of violation and the fines imposed. However, Calvary Chapel did not appeal the November 9, 2020 notice of violation to the County hearing officer.

### 4. Appeal to Superior Court and Order

On November 23, 2020, Calvary Chapel filed an appeal in the superior court from the County hearing officer's November 2, 2020 decision to uphold the fines in the amount of $327,750. In its pretrial brief, Calvary Chapel asserted its right to argue on appeal that the public health orders were unconstitutional although constitutional issues could not be raised in the administrative hearing. In its constitutional challenge, Calvary Chapel argued that the fines imposed for violation of the public health orders should be reversed because the free exercise clause of the First Amendment was violated by the public health orders' restrictions on gatherings and by the requirement that it submit a

7

social distancing protocol that included compliance with unconstitutional safety measures.

In the April 8, 2021 order, the superior court affirmed the administrative decision. (*Calvary Chapel San Jose v. County of Santa Clara*, Super. Ct. Santa Clara County, 2020, No. 20CV374470.)  At the outset, the superior court rejected the County's argument that Calvary Chapel could not raise constitutional issues on appeal.  The superior court determined that Calvary Chapel could raise on appeal from the administrative decision its constitutional challenges to the public health orders and the Urgency Ordinance.

Addressing Calvary Chapel's contention that the public health orders and the Urgency Ordinance violated its right to the free exercise of religion under the First Amendment, the trial court stated:  "This court will assume for argument's sake that even the capacity limitations applicable to secular essential services and the singing ban which [Calvary Chapel] appears to have violated on every Sunday identified in the operative [n]otices of [v]iolation may be deemed unconstitutional as applied to [Calvary Chapel] by the United States Supreme Court.  But no court has relieved [Calvary Chapel] of its obligation to comply with the requirements of face coverings and physical distancing. And [Calvary Chapel] makes no attempt to claim that the indoor gathering ban cannot be treated as severable.  [Citations.]  A clear majority of the [United States] Supreme Court has deemed it significant to the easing of restrictions on indoor worship that these rudimentary measures for mitigating risk indoors 'are in routine use in religious services across the country today.' "

Having reviewed the administrative record and additional evidence submitted by the parties, the superior court found that Calvary Chapel "acknowledges that 'it has been holding indoor services without enforcing social distancing or mask wearing.' "  The trial court rejected Calvary Chapel's contention that the fines in the amount of $327,750 for its undisputed violations of the public health orders were excessive, finding that the

8

amount of the fines had been insufficient to incentivize Calvary Chapel to comply with "rudimentary hygiene requirements."

Calvary Chapel filed a notice of appeal from the trial court's April 8, 2021 order in this court. This court issued an order to show cause why the appeal should not be dismissed as taken from a nonappealable order. (*Calvary Chapel San Jose v. County of Santa Clara*, case No. H049096.) In response, on June 25, 2021, Calvary Chapel filed a notice of abandonment of the appeal.

### C. *The Amended Complaint*

In July 2021 the People filed an amended complaint seeking injunctive relief and the recovery of administrative fines. Previously, when the original complaint was the operative pleading, the People had obtained restraining orders compelling Calvary Chapel to comply with the COVID-19 public health orders, which Calvary Chapel also violated. The People then initiated contempt proceedings against Calvary Chapel due to the violations of court orders. The trial court issued two orders against Calvary Chapel and its pastors, the December 17, 2020 and the February 16, 2021 orders of contempt and to pay monetary sanctions.

Calvary Chapel sought review of the contempt orders and monetary sanctions in this court. In three cases, *People v. Calvary Chapel* (Aug. 15, 2022, H048708), *Calvary Chapel San Jose v. Superior Court* (Aug. 15, 2022, H048734) and *McClure v. Superior Court* (Aug. 15, 2022, H048947)[2] (collectively, *Calvary Chapel*), this court annulled the December 17, 2020 and the February 16, 2021 orders of contempt, and reversed the orders to pay monetary sanctions.

In *Calvary Chapel,* this court concluded that the temporary restraining orders and preliminary injunctions were facially unconstitutional with respect to the restrictions on indoor gatherings, pursuant to the then recent guidance of the United States Supreme

[2] On the court's own motion, we ordered case Nos. H048708, H048734, and H048947 to be considered together for purposes of oral argument and disposition.

Court regarding the First Amendment's protection of the free exercise of religion in the context of public health orders that impact religious practice (see, e.g., *Tandon v. Newsom* (2021) 593 U.S. 61 (*Tandon*).)  However, in *Calvary Chapel* this court assumed, without deciding, that the restraining orders were not facially unconstitutional with respect to the public health orders' requirements for face coverings, social distancing, and submission of a social distancing protocol.

In the July 2021 amended complaint (hereafter, the complaint), the People alleged that Calvary Chapel's ongoing refusal to comply with any of the state and County public health orders intended to protect the public from COVID-19 posed a major health risk to the public.  The People further alleged that Calvary Chapel had ignored 70 notices of violation of the public health orders despite having knowledge of COVID-19 illness and death among its congregants and a large COVID-19 outbreak in the school associated with Calvary Chapel, which warranted injunctive relief and the imposition of administrative fines.

Regarding the administrative fines, the People asserted that, among other fines, Calvary Chapel had incurred fines in the total amount of $2,234,000 for its failure to require face coverings by its congregants and personnel between November 9, 2020, and June 21, 2021.  Additionally, due to Calvary Chapel's failure to submit a social distancing protocol between August 2020 and May 18, 2021, the People asserted that Calvary Chapel owed fines in the total amount of $1,327,750.  However, in the exercise of prosecutorial discretion the People reduced the total amount of administrative fines owed by Calvary Chapel for violation of the public health orders and sought judgment in the total amount of $2,868,616.67, plus late fees.

Based on these and other allegations, the People asserted causes of action for (1) public nuisance per se; (2) public nuisance (Civ. Code, § 3479); (3) violation of state and county public health orders; (4) violation of the Urgency Ordinance; and (5) violation

10

of Government Code section 25132, subdivision (a) (county authorized to prosecute violation of Urgency Ordinance).[3]

In addition to injunctive relief and an award of administrative fines in the amount of $2,868,616.67, the People sought staff costs and attorney fees.

**D.** *Motion for Summary Adjudication*

The People moved for summary adjudication of the first cause of action for nuisance per se, the third cause of action for violation of state and county public health orders, the fourth cause of action for violation of the Urgency Ordinance, and the fifth cause of action for violation of Government Code section 25132, subdivision (a). The basis of the motion was the People's contention that it was undisputed that Calvary Chapel had violated COVID-19 public health orders by refusing to require Calvary Chapel personnel and church attendees to wear face coverings and by refusing to submit a completed social distancing protocol.

Regarding the first cause of action for nuisance per se, the People contended that summary adjudication should be granted because the Urgency Ordinance expressly declared that violation of the public health orders was a nuisance. As to the third cause of action for violation of state and county public health orders, the People argued that summary adjudication should be granted because it was undisputed that Calvary Chapel had violated the public health orders requiring face coverings and submission of a social distancing protocol.

Similarly, the People argued that summary adjudication of the fourth cause of action for violation of the Urgency Ordinance and the fifth cause of action for violation of Government Code section 25132, subdivision (a) should be granted because it was

---

[3] Government Code section 25132, subdivision (a) provides: "Violation of a county ordinance is a misdemeanor unless by ordinance it is made an infraction. The violation of a county ordinance may be prosecuted by county authorities in the name of the people of the State of California, or redressed by civil action."

undisputed that Calvary Chapel had violated the public health orders requiring face coverings and submission of social distancing protocol, thereby violating the Urgency Ordinance.

Anticipating Calvary Chapel's constitutional arguments in opposition to the motion for summary adjudication, the People maintained that these arguments lacked merit as a matter of law. First, the People rejected the argument that the public health orders requiring face coverings violated the free exercise clause, stating: "The revised risk reduction order—which formed the basis of the face covering fines at issue here— also required that all individuals wear face coverings in indoor public spaces, subject to limited context-specific exceptions for the very young, those with medical conditions or disabilities, or while actively eating and drinking if socially distanced. Far from disfavoring religious activities, the orders impose neutral, generally applicable requirements for all comparable, regulated entities in the county." (Capitalization omitted.) The People also asserted that Calvary Chapel had not raised a constitutional objection to the public health orders requiring submission of a social distancing protocol in this litigation.

Alternatively, as the People elaborated in their reply to Calvary Chapel's opposition to the motion for summary adjudication, the People contended that Calvary Chapel was barred under the doctrine of collateral estoppel from relitigating its claim that the public health orders requiring face coverings violated the free exercise clause. According to the People, the superior court reached Calvary Chapel's constitutional arguments on appeal from the county hearing officer's decision and ruled that the requirement of a social distancing protocol did not violate the free exercise clause. The People also asserted that "[t]he [c]ourt necessarily decided the constitutionality of the [public health orders requiring] face coverings and sustained the fines because it found that 'no court has relieved [Calvary Chapel] of its obligation to comply with the requirements of face coverings and social distancing.' "

12

Second, the People argued that the administrative fines imposed on Calvary Chapel were not constitutionally excessive under the Eighth Amendment[4] because (1) the administrative fines imposed for violating the public health orders requiring face coverings and submission of a social distancing protocol were proportional to Calvary Chapel's culpability in blatantly violating the public health orders; (2) the magnitude of the risk of harm—the spread of COVID-19—caused by Calvary Chapel's disregard for the law; (3) the fines imposed were in line with the fines authorized by the COVID-19 ordinances of other counties; and (4) Calvary Chapel could not show that it was unable to pay the fines because its net assets in 2021 totaled $12,030,512.30.

E. *Opposition to Motion for Summary Adjudication*

Calvary Chapel contended that summary adjudication could not be granted as requested by the People. First, Calvary Chapel argued that summary adjudication was barred under Code of Civil Procedure section 437c, subdivision (h) because more discovery was needed; specifically, a deposition of the district attorney's office regarding prosecution of private gatherings as well as identification of the person who was supposedly served with the November 9, 2020 notice of violation.

Second, Calvary Chapel argued that its constitutional claims were not barred under the doctrine of issue preclusion because it did not have a full and fair opportunity to litigate the constitutional issues in the administrative proceedings. According to Calvary Chapel, the superior court's review of the administrative decision upholding fines in the amount of $327,750 was limited to the administrative record and the superior court did not allow additional discovery. Further, Calvary Chapel argued that the issues presented in the administrative hearing and this litigation were not identical, since different public

---

[4] "The cruel and unusual punishment clause of the Eighth Amendment states, 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' (U.S. Const., 8th Amend.)" (*County of San Diego v. Commission on State Mandates* (2023) 91 Cal.App.5th 625, 631, fn. 3.)

health orders regarding masking and the social distancing protocol were at issue. Calvary Chapel also argued that the superior court's decision was not a final judgment on the merits.

Third, Calvary Chapel maintained that summary adjudication of the first cause of action for nuisance per se and third cause of action for violation of state and county public health orders could not be granted because those causes of action were moot since the public health orders have been rescinded.

Fourth, Calvary Chapel contended that summary adjudication could not be granted as to any cause of action because the public health orders requiring face coverings and submission of a social distancing protocol violated the First Amendment since the public orders were not neutral and of general applicability, and therefore these public health orders could not survive strict scrutiny. Calvary Chapel asserted that "[t]he County provided exemptions from the social distancing and mask requirements to construction workers, personal care services, restaurants, youth programs, and athletes competing in sports like basketball, football, and wrestling."

Fifth, Calvary Chapel argued that summary adjudication should be denied because there were triable issues of fact as to the daily fines imposed for violating the face covering requirements since a County enforcement officer did not make daily observations. Calvary Chapel also argued that a triable issue of fact existed as to whether Calvary Chapel's agent, Pastor Carson Atherley, had received personal, e-mail, or mail service of the November 9, 2020 notice of violation.

Finally, Calvary Chapel contended that the administrative fines were unconstitutional because the fines were excessive under the Eighth Amendment; the County discriminated against Calvary Chapel for holding church services because large maskless gatherings held in homes were not cited; and the fines violated the due process clause because Calvary Chapel did not receive notice of the November 9, 2020 notice of violation and the County arbitrarily enforced the Urgency Ordinance.

14

**F.** *Trial Court Order and Judgment*

In the April 7, 2023 order, the trial court granted the People's motion for summary adjudication after finding no merit in Calvary Chapel's arguments in opposition to the motion.

The trial court rejected Calvary Chapel's argument that summary adjudication could not be granted because more discovery was needed. The trial court ruled that "[d]efendants have . . . had over two years to pursue discovery both here and in the federal action, have consistently maintained that the County's health orders were unconstitutional since the appeal of the administrative proceeding, and obtained several opinions from appellate courts and the U.S. Supreme Court outlining that court's clear views regarding the constitutionality of COVID-19 public health orders (or lack thereof). On this record, there is no good cause for a continuance for further discovery to be conducted; the matter is ripe for summary adjudication."

Addressing the first and third causes of action, the trial court ruled that the People had met their burden on summary adjudication because (1) it was undisputed that Calvary Chapel had violated the public health orders (the revised risk reduction order and the safety measures order) by refusing to require or enforce the wearing of face coverings during the period face coverings were required and by failing to submit a completed social distancing protocol; and (2) the Urgency Ordinance stated that such violations constituted a nuisance.

As to the fourth and fifth causes of action, the trial court ruled that the People had met their burden on summary adjudication because it was undisputed that Calvary Chapel had violated the Urgency Ordinance by violating public health orders requiring face coverings and the submission of a social distancing protocol, and also because the County was authorized by the Urgency Ordinance and Government Code section 25132, subdivision (a) to bring an action to recover costs, attorney fees, and fines for violation of the public health orders. It was also undisputed, the trial court found, that Calvary

15

Chapel had failed to pay any of the fines imposed for its continuing violations of the public health orders.

The trial court then considered Calvary Chapel's constitutional defenses to the public health orders requiring face coverings and the submission of a social distancing protocol. As a threshold matter, the trial court rejected the People's contention that Calvary Chapel's constitutional defenses were barred by issue preclusion because the superior court had ruled on appeal from the administrative decision that the public health orders did not violate the free exercise clause. The court determined that the constitutionality of the public health orders requiring face coverings and the submission of a social distancing protocol were not "fully addressed" by Calvary Chapel during their appeal of the administrative decision.

However, the trial court found no merit in Calvary Chapel's argument that the public health orders requiring face coverings and the submission of a social distancing protocol violated the free exercise clause of the First Amendment. The trial court ruled these public health orders expressly applied to " 'all individuals, businesses, and other entities in the County' [citation] and thus were facially neutral, generally applicable requirements for all comparable, regulated entities in the County."

The trial court was not persuaded by Calvary Chapel's arguments to the contrary that the public health orders were not neutral because "various businesses, such as restaurants, personal care services, athletic activities, and youth programs, were 'exempt' from both the mask and the social distancing requirements." Noting that Calvary Chapel's argument was supported by declarations pertaining to construction workers not wearing face coverings while working and firefighters not wearing face coverings indoors, the trial court found that in the absence of any complaints to the County, this evidence did not show that the County was applying the public health orders differently and instead merely demonstrated that some individuals did or did not comply with the public health orders.

16

Accordingly, the trial court ruled that Calvary Chapel's evidence failed to show that the County's enforcement officers treated activities comparable to Calvary Chapel's large indoor church services more favorably with respect to the requirements for face coverings and the submission of a social distancing protocol. The trial court also noted that the United States Supreme Court had recognized face coverings and social distancing requirements as basic public health measures consistent with conducting indoor religious services during the COVID-19 pandemic, citing, among other decisions, *South Bay United Pentecostal Church v. Newsom* (2021) 592 U.S. ___ [141 S. Ct. 716, 718–719] (*South Bay United*).

The trial court also ruled that the administrative fines imposed by the County on Calvary Chapel due to its continuing violations of the public health orders requiring face coverings and the submission of a social distancing protocol did not violate due process. The court determined that due process required that notice be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' " and the methods of service authorized by the Urgency Ordinance met that standard. Specifically, the court found that the evidence established the County served the November 9, 2020 notice of violation on Calvary Chapel by conspicuously posting it on a Calvary Chapel building and by personally serving it on an agent of Calvary Chapel who, in addition to other indicia of agency, verbally affirmed that he was authorized to accept service. The trial court also found that Calvary Chapel had failed to establish its claim of arbitrary and discriminatory enforcement of the public health orders with admissible evidence.

Finally, the trial court found no merit in Calvary Chapel's contention that the administrative fines violated the excessive fines clause of the Eighth Amendment. The court found it was undisputed that (1) Calvary Chapel was culpable because it refused to comply with the public health orders despite knowing that church attendees had contracted COVID-19 and the church school had a major COVID-19 outbreak; (2) there

17

was a relationship between the penalty and the harm caused by Calvary Chapel holding church services in violation of the public health orders that put vulnerable members of the community who could die from contracting COVID-19 at risk; (3) the amount of the fines imposed by the Urgency Ordinance was in line with the fines imposed by other counties' ordinances; and (4) Calvary Chapel was able to pay the fines.

The trial court also ruled that the amount of the administrative fines was not excessive because the cumulative amount was due to Calvary Chapel's continuing refusal to comply with the public health orders. However, the trial court reduced the amount of the administrative fines that Calvary Chapel was obligated to pay. Since the August 23, 2020 notice of violation had been found to be unconstitutional, the trial court subtracted the fines imposed for that violation. The court also subtracted the fines imposed for violating the requirement of submission of a social distancing protocol, determining that the social distancing protocol required face coverings and therefore Calvary Chapel had been fined twice for violating the face covering requirements.

The trial court ruled that the appropriate amount of administrative fines for Calvary Chapel's undisputed refusal to comply with the public health orders' face covering requirements from November 9, 2020, through June 21, 2021, was $1,228,700.

Subsequently, in the February 2, 2024 order, the trial court granted the People's unopposed motion to set aside the People's dismissal of the entire action with prejudice and to dismiss the remaining unadjudicated second cause of action for public nuisance with prejudice. Judgment was entered on February 2, 2024, in favor of the People.

### III. DISCUSSION

On appeal, Calvary Chapel contends that the trial court erred in granting the People's motion for summary adjudication because (1) the public health orders requiring face coverings are unconstitutional since the orders violate the free exercise clause of the First Amendment; (2) triable questions of fact exist as to whether the County violated due process; and (3) the fines imposed are excessive and therefore violate the excessive fines

18

clause of the Eighth Amendment. We will begin our evaluation of these contentions with the applicable standard of review.

## A. *Standard of Review*

A party may move for summary judgment of an entire action or, in the alternative, summary adjudication of a cause of action. (Code Civ. Proc., § 437c, subds. (a)(1) & (f)(1), (2).) Both motions are "subject to the same rules and procedures." (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819; see Code Civ. Proc., § 437c, subd. (f)(2).)

A plaintiff moving for summary judgment "bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); Code Civ. Proc. § 437c, subd. (p)(1).) "Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The defendant . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc. § 437c, subd. (p)(1).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850.)

19

"In reviewing a trial court's grant of summary judgment, . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo. " ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)  The trial court's stated reasons are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale." (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

## B. *Issue Preclusion*

We will begin our analysis of Calvary Chapel's contentions on appeal with the threshold issue of whether Calvary Chapel's argument that the County's public health orders requiring face coverings violate the free exercise clause of the First Amendment is barred under the doctrine of issue preclusion.

### 1. The Parties' Contentions

The People contend that under the doctrine of "claim preclusion" Calvary Chapel should not be allowed to relitigate its claim that the public health orders requiring face coverings violated the free exercise clause.  According to the People, the superior court necessarily rejected that claim in affirming the administrative decision when the court rejected Calvary Chapel's argument that the requirement of a social distancing protocol was an unconstitutional violation of the free exercise clause, since the face covering requirement was incorporated in the social distancing protocol.

Calvary Chapel responds that the trial court correctly found that issue preclusion did not apply because Calvary Chapel did not have a full and fair opportunity to litigate its constitutional claim since the superior court in the prior matter did not consider its free exercise argument.  Calvary Chapel also asserts that it was not able to fairly and fully conduct discovery or develop its constitutional defenses in the prior matter.

### 2. Analysis

We use the term " 'claim preclusion' " to refer to the doctrine addressing claims that were, or should have been, advanced in a previous suit involving the same parties,

20

and the term " 'issue preclusion' " in place of " 'direct or collateral estoppel' " to refer to the doctrine barring relitigation of issues that were argued and decided in an earlier suit. (See *Samara v. Matar* (2018) 5 Cal.5th 322, 326; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)

Whether issue preclusion applies to bar relitigation of a particular issue is a question of law. (*Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216, 225.) The California Supreme Court has instructed that "[i]ssue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) "[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.) "The party asserting issue preclusion has the burden of establishing the above elements." (*Williams v. Doctors Medical Center of Modesto, Inc*. (2024) 100 Cal.App.5th 1117, 1132.)

We determine that the People have not met their burden to establish as a matter of law that issue preclusion applies because an identical issue was actually litigated in the prior administrative proceeding. Our Supreme Court has instructed that "[f]or purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding . . .. 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " (*Hernandez v. City of Pomona* (2009) 46 Cal. 4th 501, 511–512 (*Hernandez*).)

21

Our review of the county hearing officer's November 2, 2020 decision and the trial court's April 7, 2023 order granting summary adjudication shows that different public health orders requiring face coverings and different amounts of fines were litigated in the prior administrative proceeding and the present appeal.

As stated in the County hearing officer's decision, the 10 public health orders that Calvary Chapel challenged in the administrative proceedings were dated August 23, 2020, through October 18, 2020. Calvary Chapel also challenged the fines in the amount of $327,750 that the County had imposed for those violations.

In the present appeal, Calvary Chapel challenges the trial court's ruling that Calvary Chapel violated the public health orders requiring face coverings dated November 9, 2020, through June 21, 2021, and the ruling upholding fines in the amount of $1,228,700 for those violations.

Since the public health orders and fines that were litigated in the prior administrative proceedings are different than the public health orders and fines at issue in the present litigation, we decide that identical factual allegations regarding Calvary Chapel's violations of those orders and the amount of the fines imposed were not " 'at stake in the two proceedings.' " (See *Hernandez*, *supra*, 46 Cal. 4th at p. 512.) We therefore determine that Calvary Chapel's argument that the public health orders requiring face coverings violate the free exercise clause is not barred by the doctrine of issue preclusion.

## C. *Violation of the Free Exercise Clause*

Calvary Chapel contends that the trial court erred in ruling that the public health orders requiring face coverings did not violate the free exercise clause of the First Amendment. We will begin our analysis with an overview of the Clause.

### 1. Free Exercise Clause

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting

the free exercise' of religion." (*Fulton v. City of Philadelphia* (2021) 593 U.S. 522, 532.) "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." (*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (1993) 508 U.S. 520, 531.) However, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance ' "interests of the highest order" ' and must be narrowly tailored in pursuit of those interests." (*Id.* at p. 546.)

Addressing a COVID-19 public health order that limited gatherings to three households, the United States Supreme Court emphasized in a per curiam opinion that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." (*Tandon, supra*, 593 U.S. at p. 62.) Although the Supreme Court has not directly addressed face covering requirements in the context of a Free Exercise challenge, in a church's challenge to COVID-19 capacity restrictions Justice Gorsuch described masks as a measure "in routine use in religious services across the country today." (*South Bay United*, *supra*, 592 U.S. at p. ___ [141 S. Ct. 716, 719] (conc. opn. of Gorsuch, J.).)

More recently, the United States Supreme Court clarified the standard for determining whether a government action violates the free exercise clause: "A government policy will not qualify as neutral if it is 'specifically directed at . . . religious practice.' [Citation.] A policy can fail this test if it 'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.' [Citations.] A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or

23

if it provides 'a mechanism for individualized exemptions.' [Citation.] Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." (*Kennedy v. Bremerton School Dist.* (2022) 597 U.S. 507, 526 (*Kennedy*).)

With this guidance in mind, we next review the text of the face covering requirements in the revised risk reduction order and the safety measures order that are at issue in this appeal.

### 2. Revised Risk Reduction Order

The October 5, 2020 revised risk reduction order required face coverings to be worn as specified in the state's June 18, 2020 guidance for the use of face coverings. The June 18, 2020 state guidance states: "People in California must wear face coverings when they are in the high-risk situations listed below: [¶] Inside of, or in line to enter, any indoor public space; [¶] Obtaining services from the healthcare sector in settings including, but not limited to, a hospital, pharmacy, medical clinic, laboratory, physician or dental office, veterinary clinic, or blood bank; [¶] Waiting for or riding on public transportation or paratransit or while in a taxi, private car service, or ride-sharing vehicle; [¶] Engaged in work, whether at the workplace or performing work off-site, when [¶] Interacting in-person with any member of the public; [¶] Working in any space visited by members of the public, regardless of whether anyone from the public is present at the time; [¶] Working in any space where food is prepared or packaged for sale or distribution to others; [¶] Working in or walking through common areas, such as hallways, stairways, elevators, and parking facilities; [¶] In any room or enclosed area where other people (except for members of the person's own household or residence) are present when unable to physically distance; [¶] Driving or operating any public transportation or paratransit vehicle, taxi, or private car service or ride-sharing vehicle when passengers are present. When no passengers are present, face coverings are strongly recommended. [¶] While outdoors in public spaces when maintaining a

24

physical distance of [six] feet from persons who are not members of the same household is not feasible." (Fns. omitted.)

The June 18, 2020 state guidance on face coverings also provided exceptions, as follows: "The following individuals are exempt from wearing a face covering: [¶] Persons age two years or under. These very young children must not wear a face covering because of the risk of suffocation. [¶] Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering. This includes persons with a medical condition for whom wearing a face covering could obstruct breathing or who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance. [¶] Persons who are hearing impaired, or communicating with a person who is hearing impaired, where the ability to see the mouth is essential for communication. [¶] Persons for whom wearing a face covering would create a risk to the person related to their work, as determined by local, state, or federal regulators or workplace safety guidelines. [¶] Persons who are obtaining a service involving the nose or face for which temporary removal of the face covering is necessary to perform the service. [¶] Persons who are seated at a restaurant or other establishment that offers food or beverage service, while they are eating or drinking, provided that they are able to maintain a distance of at least six feet away from persons who are not members of the same household or residence. [¶] Persons who are engaged in outdoor work or recreation such as swimming, walking, hiking, bicycling, or running, when alone or with household members, and when they are able to maintain a distance of at least six feet from others. [¶] Persons who are incarcerated. Prisons and jails, as part of their mitigation plans, will have specific guidance on the wearing of face coverings or masks for both inmates and staff."

### 3. Safety Measures Order

Also at issue due to Calvary Chapel's violations is the subsequent May 18, 2021 safety measures order, which provided as follows regarding requirements for face

25

coverings: "All persons must follow the health officer's mandatory directive on use of face coverings." (Capitalization omitted.) The mandatory directive on use of face coverings, effective May 19, 2021, stated that "[a]ll residents, businesses, and governmental entities must follow the California Department of Public Health's guidance for use of face coverings . . . issued on May 3, 2021." (Some capitalization omitted.) The California Department of Public Health's (CDPH) May 3, 2021 guidance for use of face coverings stated: "1. For fully vaccinated persons, face coverings are not required outdoors except when attending crowded outdoor events, such as live performances, parades, fairs, festivals, sports events, or other similar settings. [¶] 2. For unvaccinated persons, face coverings are required outdoors any time physical distancing cannot be maintained, including when attending crowded outdoor events, such as live performances, parades, fairs, festivals, sports events, or other similar settings. [¶] 3. In indoor settings outside of one's home, including public transportation, face coverings continue to be required regardless of vaccination status, except as outlined below. [¶] 4. As defined in the CDPH Fully Vaccinated Persons Guidance, fully vaccinated people can: [¶] Visit, without wearing masks or physical distancing, with other fully vaccinated people in indoor or outdoor settings; and [¶] Visit, without wearing masks or physical distancing, with unvaccinated people (including children) from a single household who are at low risk for severe COVID-19 disease in indoor and outdoor settings." (Boldface & italics omitted.)

The May 3, 2021 state guidance also included the following exemptions from the face covering requirements: "The following specific settings are exempt from face covering requirements: [¶] Persons in a car alone or solely with members of their own household, [¶] Persons who are working alone in a closed office or room, [¶] Persons who are obtaining a medical or cosmetic service involving the nose or face for which temporary removal of the face covering is necessary to perform the service, [¶] Workers who wear respiratory protection, or [¶] Persons who are specifically exempted from

26

wearing face coverings by other CDPH guidance. [¶] The following individuals are exempt from wearing face coverings at all times: [¶] Persons younger than two years old. Very young children must not wear a face covering because of the risk of suffocation. [¶] Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering. This includes persons with a medical condition for whom wearing a face covering could obstruct breathing or who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance. [¶] Persons who are hearing impaired, or communicating with a person who is hearing impaired, where the ability to see the mouth is essential for communication. [¶] Persons for whom wearing a face covering would create a risk to the person related to their work, as determined by local, state, or federal regulators or workplace safety guidelines." (Boldface & fn. omitted.)

### 4. The Parties' Contentions

Calvary Chapel contends that the public health orders requiring face coverings are not neutral and of general applicability because (1) the public health orders gave firefighters, government entities, and construction workers individual discretion regarding the use of face coverings; (2) the public health orders "provided exemptions from the social distancing and mask requirements to construction sites, personal care services, restaurants, youth programs, and athletes competing in sports like basketball, football, and wrestling;" (3) the public health orders requiring face coverings cannot survive strict scrutiny because there is no evidence that church services were inherently more dangerous than the exempted secular activities and the face covering requirements substantially burdened Calvary Chapel's religious beliefs that worshipers must gather in person with uncovered faces and lay hands on each other.

The People respond that the trial court did not err in determining that the public health orders do not violate the free exercise clause because Calvary Chapel has not provided any evidence that the orders' face covering requirements treated comparable

27

secular activities more favorably than Calvary Chapel's large, indoor church services. The People also argue that the trial court correctly ruled that the public health orders did not authorize the government to grant exceptions to the face covering requirements on a case-by-case basis.

Alternatively, the People contend that the public health orders' face covering requirements survive strict scrutiny because it cannot be disputed that the People had a compelling state interest in stemming the spread of COVID-19. Further, the People argue that Calvary Chapel's assertion that face covering requirements were not narrowly tailored because Calvary Chapel had superior ventilation is insufficient to create a triable question of fact.

### 5. Analysis

Having reviewed the revised risk reduction order and the safety measures order, we determine that the People have met their burden to establish as a matter of law that the face covering requirements set forth in the orders are neutral and of general applicability, and Calvary Chapel has failed to submit admissible evidence sufficient to create a triable issue of fact.

First, the text of the revised risk reduction order and the safety measures order shows that these orders are neutral because they are not specifically directed at religious practice, do not discriminate on their face, and religious exercise is not the object of the orders. (See *Kennedy*, *supra*, 597 U.S. at p. 526.) Calvary Chapel has not provided any admissible evidence to create a triable question of fact regarding facial neutrality.

Second, the revised risk reduction order and the safety measures order are of general applicability with respect to the face covering requirements. There is no language in the text of the orders that " 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' " or provides " 'a mechanism for individualized exemptions.' " (See *Kennedy*, *supra*, 597 U.S. at p. 526.) The face covering requirements in the revised risk reduction order and

28

the safety measures order that Calvary Chapel violated undisputedly applied to all secular business operating in Santa Clara County, and Calvary Chapel has not challenged the exemptions to face coverings included in these orders.

Moreover, we are not persuaded by Calvary Chapel's argument that these public health orders are not of general applicability due to the exemptions to the face covering requirements that were included in certain other public health orders that Calvary Chapel asserts favor comparable secular activities. Calvary Chapel broadly claims that the face covering requirements did not apply to "to construction sites, personal care services, restaurants, youth programs, and athletes competing in sports like basketball, football, and wrestling." Our review of the citations to the record in support of these claims shows that Calvary Chapel has misstated the purported exemptions.

For example, the County's October 10, 2020 mandatory directive for collegiate and professional athletics stated the following exemption to the revised risk reduction order's face covering requirements: "Athletes and officials may remove their face coverings, but only while they are actively engaged in athletic activity. [¶] All other persons associated with the program or organization must wear face coverings at all times while at any sports, training, or other facility, whether indoors or outdoors, that is associated with or being used by their athletics program or organization." All persons entering the facilities were also required to wear face coverings.

The exception pertaining to construction sites is similarly more narrow than Calvary Chapel asserts, since the County's July 7, 2020 mandatory directive for construction projects states: "Face coverings must be worn even while working at a construction project unless [] it would create a risk to the person related to their work, in accordance with local, state, or federal workplace safety guidelines." (Boldface omitted.)

The face covering requirements for restaurants, as stated in the County's October 9, 2020 mandatory directive for dining is also more limited than Calvary Chapel asserts, since the face covering exception states: "Customers may remove their face coverings

29

once their food or drinks have been served and may leave them off until they finish their meal, so long as they are not interacting with a server or other staff and remain seated at their table."  (Boldface omitted.)

Regarding personal care services, the County's January 25, 2021 mandatory directive for personal services included the following exception to the face covering requirement, as follows:  "Clients may remove face coverings while receiving a personal care service indoors or outdoors that require removal of a face covering . . ..  Clients must put their face covering back on as soon as they are able to, and must wear a face covering while waiting for their service, walking to and from the treatment area, visiting the restroom, and at all other times while at the facility."

As to youth programs, the County's October 29, 2020 mandatory directive for programs for children and youth provided exceptions to the face covering requirements only for children under the age of nine and allowed brief removal of face coverings for children and youth experiencing difficulty wearing a face covering.

Having reviewed the very limited exemptions that Calvary Chapel asserts show that the face covering requirements in public health orders are not of general applicability, we decide that Calvary Chapel has provided no evidence to create a triable question of fact regarding general applicability.  As we have discussed, these exemptions applied to children, collegiate and professional athletic activity, restaurant customers while eating, construction workers as allowed by workplace safety guidelines, and individuals while undergoing personal services involving the face.  Calvary Chapel has not shown that these secular activities were comparable to the church activities that subjected Calvary Chapel to fines for violating the face covering requirements.  (See *Tandon*, *supra*, 593 U.S. at p. 62.)  The November 9, 2020 notice of violation states that to correct the violations, Calvary Chapel was ordered to "immediately comply with the public health orders" and "(1) Require all attendees and congregants to wear face coverings while attending gatherings or while indoors in a space open to the public; and

30

"(2) Require all personnel to wear face coverings while attending gatherings or while indoors in a space open to the public."

Further, we agree with the trial court that Calvary Chapel's evidence regarding construction workers and firefighters not wearing face coverings is not sufficient to create a triable question of fact as to whether the public health orders provided an unconstitutional " 'mechanism for individualized exemptions.' " (See *Kennedy*, *supra*, 597 U.S. at p. 526.) In *Fulton*, *supra*, 593 U.S. at page 537, the court explained that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude."

In this case, Calvary Chapel has not shown that the public health orders at issue included a formal mechanism for granting individualized exceptions to the face covering requirements. Calvary Chapel relies on the declaration of fire engineer Barry Arata, who states that, although the City of San Jose required firefighters to wear masks, most firefighters did not wear masks indoors. Calvary Chapel also relies on the declaration of William Sheperd, a construction business owner, who states that his workers did not wear masks while digging trenches and operating heavy equipment, and he was not required by the contractor to wear a mask while working as a subcontractor on a project. These declarations, as the trial court noted, show only that certain individuals chose not to wear face coverings. There is no evidence that the public health orders included a mechanism for the state or County to grant individualized exceptions to the face covering requirements. Therefore, the declarations are insufficient to create a triable question of fact regarding the general applicability of the face covering requirements.

Finally, we note that the although the declarations of the industrial hygiene expert and medical expert submitted by Calvary Chapel in opposition to summary adjudication both dispute the efficacy of face coverings, neither expert opined that Calvary Chapel's

31

ventilation system as a safety measure was equal to wearing face coverings during church services as a defense against COVID-19 infection, and these opinions are therefore insufficient to create a triable question of fact regarding either neutrality or general applicability of the face covering requirements.

Having determined that Calvary Chapel has not shown in opposition to the motion for summary adjudication that triable questions of fact exist as to whether the face covering requirements in the revised risk reduction order and the safety measures order were neutral and of general applicability, we need not determine if the face covering requirements survive strict scrutiny. For these reasons, we reject Calvary Chapel's arguments based on the free exercise clause.

### D. *Due Process*

Calvary Chapel contends that the motion for summary adjudication must be denied because (1) triable questions of fact exist as to whether the County gave Calvary Chapel proper notice of the November 9, 2020 notice of violation and the fines imposed; and (2) triable questions of fact exist as to whether the County's enforcement of the Urgency Ordinance was arbitrary.

### 1. Service of the November 9, 2020 Notice of Violation

According to Calvary Chapel, triable issues of fact exist as to whether due process was violated because the County's November 9, 2020 notice of violation was served by posting the notice near the entrance to the Calvary Chapel building and by personally serving an unidentified man at the church property. The People respond that due process was satisfied because it is undisputed that the County enforcement officer posted the November 9, 2020 notice of violation near the entrance of the Calvary Chapel building. We agree with the People.

" ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity

32

to present their objections." [Citation.] Failure to give notice violates "the most rudimentary demands of due process of law." ' " (*California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 214.)

Posting a notice of violation on a conspicuous place on the subject property has been held to satisfy due process. In a case arising from the violation of building standards, the California Supreme Court stated: "By requiring that any order or notice pursuant to its terms be posted 'in a conspicuous place on the property, [Health and Safety Code] section 17980.6 provides for notice reasonably calculated to apprise the owner and others that the property has been found by the applicable enforcement agency to be in violation of specified building standards and that repair or abatement of the violations is demanded." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 924–925 (*City of Santa Monica*).)

In the present case, the Urgency Ordinance provided that notices of violation of the public health orders could be served by several methods, including "[f]or violations involving the use of real property owned or leased by a [r]esponsible [p]arty, by posting the notice in a conspicuous place at the property entrance." This method of service was therefore reasonably calculated to apprise Calvary Chapel of its violations of the County's public health orders. (See *City of Santa Monica*, *supra*, 43 Cal.4th at pp. 924–925.) Since it is undisputed that the County's enforcement officer posted the November 9, 2020 notice of violation near the entrance of the Calvary Chapel building, due process was satisfied, and it is unnecessary to resolve any factual issues regarding the identity of the man who received personal service of the November 9, 2020 notice of violation.

### 2. Arbitrary Enforcement

Calvary Chapel also argues that due process was violated because the "County arbitrarily enforced its Urgency Ordinance by imposing continuing and indefinite maximum fines for Calvary's violations of the Urgency Ordinance, while not imposing the same accrual terms on other repeat offenders." The People argue that no triable

33

question of fact exists regarding the arbitrary imposition of fines because Calvary Chapel did not provide any evidence to support arbitrary enforcement.

"The touchstone of due process is protection of the individual against arbitrary action of government.' " (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 845.) Having reviewed the evidence that Calvary Chapel identified on appeal as showing arbitrary enforcement of fine accrual terms, including the deposition testimony of a County enforcement officer and a notice of violation served on a different church, we decide that the evidence does not support Calvary Chapel's assertion that it was the only repeat offender that received a notice of violation with "indefinite accrual" of fines.

Moreover, the Urgency Ordinance clearly states the schedule for the imposition of fines, as follows: "The civil penalty for each violation involving a commercial activity shall be a fine not to exceed five thousand dollars ($5,000). The minimum amount of any such fine shall be two hundred and fifty dollars ($250). Fines imposed for each day of violation involving a commercial activity shall automatically double, up to the maximum amounts set forth above. Each day that the violation occurs after the maximum amount is reached shall be at the maximum amount. A commercial activity shall mean any activity associated with a Business or with a commercial transaction."

We therefore decide there is no merit in Calvary Chapel's argument that the motion for summary adjudication must be denied based on due process principles.

**D.** *Excessive Fines*

In granting the People's motion for summary adjudication the trial court ruled that the appropriate amount of administrative fines for Calvary Chapel's undisputed refusal to comply with the public health orders' face covering requirements from November 9, 2020, through June 21, 2021, was $1,228,700. On appeal, Calvary Chapel contends that the trial court erred because the amount of the fines is grossly disproportionate to Calvary Chapel's low level of culpability, and therefore the fines violate the excessive fines clause of the Eighth Amendment. (U.S. Const., 8th Amend.)

"The Eighth Amendment to the United States Constitution states: 'Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted.' (Italics added.) 'The Due Process Clause of the Fourteenth Amendment to the Federal Constitution . . . makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States. [Citation.] The Due Process Clause of its own force also prohibits the States from imposing " 'grossly excessive punishments. ' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 727 (*R.J. Reynolds*).)

Our Supreme Court in *R.J. Reynolds*, *supra*, 37 Cal.4th 707 identified four factors relevant to deciding whether a fine is unconstitutionally excessive: (1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay. (*Id.* at p. 728, citing *United States v. Bajakajian* (1998) 524 U.S. 321, 337–338 (*Bajakajian*).) These four factors govern our analysis of whether the fines of $1,228,700 imposed on Calvary Chapel are excessive because they are "grossly disproportional to the gravity of a defendant's offense." (*Bajakajian*, at p. 334.)

Calvary Chapel asserts that the People failed to show in moving for summary adjudication that the large amount of fines is proportional to Calvary Chapel's culpability for violating the public health orders requiring face coverings. According to Calvary Chapel, its culpability is low because the People provided no evidence to show that Calvary Chapel's violation of the public health orders caused the spread of COVID-19, since no COVID-19 cases were traced back to the church and it is a myth that church services are superspreader events. Further, Calvary Chapel argues that the culpability factor weighs in its favor due to its good faith adherence to its constitutionally protected religious beliefs. Calvary Chapel does not dispute the third and fourth factors in determining whether fines are excessive. (See *R.J. Reynolds*, *supra*, 37 Cal.4th at p. 728.)

35

The People respond that the undisputed evidence shows that Calvary Chapel's violation of the public health orders requiring face coverings put its staff, congregants, and the public at a severe risk of contracting COVID-19, including during the time before vaccines were available and hospitalizations and deaths were at their peak. The People therefore argue that the fine amount of $1,228,700 is in proportion to Calvary Chapel's high level of culpability for its repeated violations of the public health orders.

In reply, Calvary Chapel contends that the trial court erred in imposing excessive fines because there is a triable question of fact as to whether Calvary Chapel violated the public health orders requiring face coverings every day, since the County enforcement officers did not make daily observations of Calvary Chapel.

We decide that there is no triable question of fact on the frequency of Calvary Chapel's violations in light of Calvary Chapel's admission in the proceedings below that it never complied with any of the public health orders requiring face coverings. For example, in his declaration in support of Calvary Chapel's opposition to the People's motion for summary adjudication, Senior Pastor McClure stated: "As the pastor and the shepherd of the [c]hurch, I did not force my congregation to wear masks."

We also determine that the undisputed facts show that fines imposed in this case for Calvary Chapel's violation of the public health orders requiring face coverings are not grossly proportionate to Calvary Chapel's culpability. (See *Bajakajian*, *supra*, 524 U.S. at p. 334.) Significantly, it is undisputed that Calvary Chapel intentionally and repeatedly failed to comply with any of the public health orders requiring face coverings to be worn during its indoor church services and other indoor activities. The November 9, 2020 notice of violation that is the basis for the fines imposed here stated that fines were imposed on Calvary Chapel for violating the revised risk reduction order's face covering requirements after receiving a cease and desist letter and 12 previous notices of violation.

Further, it cannot be disputed that COVID-19 is a highly contagious disease that caused severe illness and death during a global pandemic, that Calvary Chapel was aware

36

that some of its congregants had contracted COVID-19 and its school had sustained a serious outbreak, and that the County issued the public health orders requiring face coverings in certain circumstances as part of the County's effort to slow the spread of COVID-19. We therefore determine that the undisputed facts show that Calvary Chapel's level of culpability due to violating the public health orders requiring face coverings is high, and therefore the fines in the amount of $1,228,700 do not violate the excessive fines clause of the Eighth Amendment because the fines are not grossly disproportionate to Calvary Chapel's culpability. (See *Bajakajian*, *supra*, 524 U.S. at p. 334.)

In conclusion, having found no merit in Calvary Chapel's arguments on appeal, we will affirm the judgment in the People's favor.

## IV. DISPOSITION

The February 2, 2024 judgment is affirmed. Costs on appeal are awarded to respondents.

_____
                                Danner, J.

WE CONCUR:



_____
Greenwood, P. J.



_____
Wilson, J.



**H051860**
*People et al. v. Calvary Church San Jose et al*